We'll start with the first case for argument, which is Amanda Johnson v. L'Oreal USA. All right, Mr. Chiarone, whenever you're ready. Good morning, Your Honors, and may it please the Court. Questions of fact pervade this record. Questions of fact which a jury and not the district court should decide. I'd like to discuss two of those fact questions with the Court this morning. First, there's sufficient evidence, much of it overlooked by the district court, that Johnson's depression was a but-for reason for L'Oreal's firing decision, a conclusion bolstered by L'Oreal's failure to accommodate her known disability. What accommodation did you or do you now suggest would beat the disability? So, Your Honor, I think before we get into what the accommodation is, I think in the first instance L'Oreal needed to have engaged in an interactive process to find an accommodation. As you sit here now, what accommodation? Well, meaningful time off, an actual leave for her to get better, which is a common accommodation for persons with mental health disabilities, would have been a very reasonable accommodation here. There was no discussion about her actually taking time off in any meaningful way, and Ms. Johnson's perception from having spoken to L'Oreal was that So I think an accommodation here of actually allowing her time off, transferring her work instead of holding her accountable for the work that wasn't getting done in the days she was taking off, and actually treating the accommodation as an accommodation, basic steps, Your Honor. I don't think it would have been difficult to accommodate her here. I didn't understand one part of what you just said, which is that she believed she would be punished if she took time off or whatever. Her belief is not relevant to this matter, is it? Well, insofar, Your Honor, as the defendant is now claiming that in some way Ms. Johnson did not act in good faith in the interactive process, I think it speaks to that. But you're right insofar as it was L'Oreal's obligation to engage her in an interactive dialogue about whether there was an accommodation that would suit her, and specifically discuss with her the limitations that she had, to what degree, and what accommodation might address those limitations. And none of that happened in any meaningful way here. There's also significant evidence that the district court overlooked of animus against Johnson for her disability. And just as an example, I want to point the court to a series of conversations that HR had with her reports in April. This is following the last conversation in which L'Oreal even alleges there was some conversation about an accommodation. But all of her reports reported back to HR that she was showing signs of depression, that it was affecting her work, the absences were an issue for them, and one quote said her mental illness is not under control. Critically, although L'Oreal knew that Johnson was in crisis at this point, didn't take any steps to mitigate the situation, didn't engage in the interactive process. Instead, it embraced the team's biased complaints, made minimal effort to actually help her. I think the record at 697 encapsulates L'Oreal's attitude towards Johnson. And I'm paraphrasing slightly, but this is an email from HR to Mr. Bethel-Mirada, who is Johnson's supervisor. And HR says, regardless of the rationale for Johnson's performance, we are, quote, getting worried that optically it is starting to appear that we are letting her not come to work and not addressing her behavior, even though, quote, we know she needs help. So in other words, L'Oreal knew Johnson's difficulty at work was due to her disability, but it's sure complying with the ADA in favor of punishment. I know she needs help, but, quote, the rationale, her disability, doesn't matter. This is exactly the kind of approach and behavior that's prohibited by the ADA. It's also contrary to this Court's holding in Brady v. Walmart, which requires an employer to reasonably accommodate a disability that is obvious, that is known to the employer, which is the case here. I want to address briefly L'Oreal's claim that it satisfied its legal obligations, which we, of course, dispute, but I think raises a question. Before you get to that, because I think it's a predicate question, so your answer to my initial question, that time off, so what in the record would establish that a reasonable accommodation of time off would have aided her to meet her work obligations? I think two things, Your Honor. One, in March of 2018, Ms. Johnson took time off that she framed as a vacation that was clearly because she needed some time off. Two, L'Oreal essentially concedes that it would be a reasonable accommodation. In their papers, they argue that Rada offered her, quote, time off in part of the April 4th discussion. So I think under even L'Oreal's own view of this, time off would have been beneficial. And then I suppose the point you're about to make, before I interrupted you, would deal with the fact that, as you just said, Rada offered time off. Well, that's L'Oreal's position. I mean, I think that's a disputed fact, honestly, Your Honor. That's not Johnson's recollection of that conversation. And I think to some degree it's disingenuous when, in the same conversation in which that statement was made, it was a conversation with Johnson about her, quote, performance issues, these text messages that come up later that they say justify her firing, the issue of her absences. And so to have that conversation with Johnson and then arrive at, by the way, you can take time off, I don't think that's a fair and complete discussion. And, in fact, Ms. Johnson left that conversation early because she wasn't feeling well. She thought she was going to have a panic attack. Subsequent to that, in the two and a half months, there's no follow-up from L'Oreal, even though shortly after, the conversations with her subordinates that I mentioned occur, in which they express concern, specific concern, about her disability. So what do you say about what this court said in McElwee v. City, County of Orange, 700 F. 3rd, 635 at 641? Quote, workplace misconduct is a legitimate and nondiscriminatory reason for terminating employment, even when such misconduct is related to a disability. I'm glad you raised that point, Your Honor, because at the district court level, both defendant and district court made the assumption, made the argument, that Johnson was arguing her conduct should somehow be forgiven because of her disability. That's not an argument here. If there is true misconduct, whether or not there's a disability, could L'Oreal have fired her? Yes, but the question is, is that the real reason here? And there's a lot of evidence in this record that that's not the actual reason, that it's a pretext. L'Oreal knew about these text messages. There's evidence that they had seen them months before. There's evidence that they were talked about months before, but I think, tell me if this is disputed, that it isn't until the June time frame, close to the time of firing, that the decision makers are shown the full text messages and social media postings. Is that right? That's not right. That's disputed, Your Honor. And so Rado's testimony, he's the only one that testifies to this, is that he's seen these text messages for the first time. But that lacks credibility in light of the fact that there was a meeting to discuss those text messages in April, in which HR, who had already seen those text messages, was present, where they discussed specifically, there's evidence in the record, the word intestines, which came up in one of those two text messages. Rado was meeting with, the testimony said he was meeting with HR twice a week to talk about Johnson's performance. A jury doesn't have to accept Rado's testimony on this. There's lots of evidence that he's simply not being credible. He's not credible more generally. I'll add one more point to that, that Johnson's manner of speaking may be colorful, may be rough, but it was not something that was new to L'Oreal. She had been with the company over two years, and the manner in which she spoke was consistent throughout that time, and at no point did L'Oreal take issue with how she spoke. And so that also questions the idea that suddenly viewing these text messages changed the picture for Rado. But there's also entirely this other issue of what Rado is doing in the time between her June 6 complaint and June 15 when the decision is made. There's a complete failure of him to investigate this complaint, to report the complaint. He makes misrepresentations about it. He downplays it to HR. He doesn't disclose it to HR. There's a conflict in the testimony. Rado says he did. HR says, I haven't seen this complaint until this litigation. He makes efforts in the time period between when she makes her protected complaint and when she's fired to actively go back to her subordinates and ask for additional performance concerns. And so lo and behold, additional performance concerns arise, but all the issues that had surfaced months before had been discussed with everyone and were not new. So it may be that a jury decides, you know what, these text messages were enough, but it is not a conclusion that's required in this record, and that's the issue on appeal is whether a jury should decide this, not the district court. I think we've got some rebuttal time. Okay. Thank you. Good morning, Your Honors. I'm Jean Schmidt for the defendant, L'Oreal. May it please the court. I think it's best that we just start out with addressing the issues that Mr. Chiaro has raised regarding disputed issues of fact, because it's our position that the district court carefully parsed through the record and based on the undisputed facts determined that the plaintiff had not been able to show that but for her disability or but for her text message regarding Mr. Craft, she would not have been terminated, and that is the important point in the standard here. With respect to the whole issue of the disability discrimination, there really isn't evidence that they had any animus toward her because of her alleged depression. What was being manifested in which I think is clear from the record is that people were complaining about her performance, which is exactly what is the issue. Her position is because all of my bad behavior and inappropriate performance and failure of performance was caused by my depression, I get a pass. That's obviously, as Judge Rakoff pointed out in the case, not the standard here. If you are addressing the person. It seems as if your adversary disavowed that as being what the position is, that it's her disability misconduct caused by disability does not get a pass, but the idea that in fact it was not addressed or accommodated. Okay, so let's now shift to that, which is now their position, and let's talk about the issues of accommodation. Can you say shift to that because it wasn't raised below? Well, no, they did raise the issue of the failure to accommodate, but it's our position that was very clear in the record below and even in their movie papers here that their primary, when they talk about that there is animus, it is all related to people complaining about her performance and in fact used the term equating the two. So my point was that's not the standard here in the circuit court. Now their next argument is that L'Oreal should have accommodated her, and I think the record is very clear, and the district court lays out all of the ways in which she was accommodated in fact. It is not the employer's obligation once they have reached. Can I just jump in a little on that, on the accommodation question? Yes. There is evidence regarding meetings with various individuals and to the extent that certain people in the meetings are saying, well, this is what was discussed, and someone else, Johnson, is saying, well, no, that wasn't discussed at the meeting. I mean, that does seem to be wading into the area of weighing the evidence to the extent the district court is saying, oh, well, L'Oreal did everything it could to accommodate her, and it's because of X, Y, and Z, but X, Y, and Z there are not, it's hard to see the undisputed facts in there. If Your Honor, I disagree with Mr. Chiro's characterization because if you look at the record and the undisputed facts, at the April 4th meeting, it is undisputed, and actually the statement of facts and Ms. Johnson does not dispute that she was asked whether or not she needed time off and that she said no. That actually is not something that she disputes. And, in fact, at her deposition she talks about, and if you look at the statement of undisputed facts, she does not dispute that during that meeting they said to her, Rada said to her specifically, do you need time off, and she said no. But going forward from that, it was very clear, it's also undisputed that immediately, that during that conversation and immediately thereafter, Morales, the HR person, reached out to her and said, whatever you need, let us know, whatever you need, what resources you need, let us know how we can help you. Johnson responded to her asking for certain resources which HR supplied to her. Johnson also said to Morales at that time, shortly after that April 4th meeting, that she was meeting with her doctor to have to develop a plan. Morales immediately responds to her, great, let me know what we can do, and again offers to help. Is that in dispute, the fact that Morales offered, essentially said, what can I do, how can I help? Because it's in the text messages that they exchanged in the email, so in the record you see, and in the court's recitation, in the decision about the various ways in which he believes the record showed that L'Oreal attempted to accommodate her, there are references there too, and actual text messages that they are exchanging where she is offering to help and saying let me know what we can do. From that point forward, radio silence from Ms. Johnson, nothing, zero. I think that what I understood, counsel, on this point, I hadn't fully appreciated it, was that that record is that record, but the dispute is if you look at it in context, Ms. Johnson understood, believed to understand, that in fact she couldn't ask for time off. What's your view of that as a, if it is a factual dispute, and what we should do with it if it is? I don't believe there is any testimony in the record, either by Ms. Johnson or anybody else, that she believed she would be punished for taking time off, and in fact, to the contrary, one of the arguments they made with respect to her termination was that she was never told that her absences would lead to her termination. That's in their argument, in their brief, when they are challenging, among other things, L'Oreal's reference to the fact that she wasn't present for her team, that they were arguing that she was never told that. So for him now to stand up and say she thought she was going to be punished for that, there is absolutely no evidence for that. Isn't that a slightly different argument? I mean, it's one thing if she is unaware that the time that she's missed or absences, that L'Oreal is concerned about that and that she might be fired for that, versus saying, we see you're struggling, do you need time off, and you're reticent or worried that, oh, this is going to, this is a problem, if I accept that. Those don't seem like quite the same issue. Well, I guess my point would be what evidence is there that you're worried about it or you're concerned if you're saying nobody ever told me this was a problem. And also because in March, when the doctor said she should take time off, she took time off, and she wasn't punished for that. And they allowed her to work from home, which is the accommodation, by the way, that at the deposition she said she needed. She never said that she needed to take time off. And in any event, my point is that the record is very clear that we continue to, Morales continued to offer help, whatever you need, let me know, and that after that point, there was complete silence for Ms. Johnson. Now, they talk about the – I'm sorry to interrupt, but I've been confused throughout this argument by the suggestion that plaintiff has made a claim here on appeal of a failure to accommodate. I don't see that. I was just going back to the plaintiff's brief to this court, and all the numerous points that he raises are about the firing of Ms. Johnson and his claim that that was based on improper reasons. A failure to accommodate may or may not be relevant to that analysis, but it's not raised here as near as I can tell as a separate claim. I believe they did raise that as a separate claim. Where in the brief do you see that? If you go to plaintiff's brief, that's one of the arguments that they make. The first point – I'm just looking at the table of contents. The first point is the district court's analysis failed to adhere to appropriate legal standards. Okay, so that's not such a claim. The second point is dismissal of Johnson's retaliation claims was something that has nothing to do with it. I think page 55 of the brief. The failure to accommodate. But that is in the context of point four, which starts off. The district court ignored significant evidence that L'Oreal was motivated by and fired Johnson because of her disability and related excused absences. So – and then the accommodation point is just made as evidence of the alleged improper filing, not as a separate claim. Your Honor – If you're not contesting they've made that claim, far be it. For me, I just – I did – I was able to actually work my way through the entire 80 pages of their brief. I didn't fall asleep. I didn't watch television. But I didn't really see accommodation as a separate claim. We have treated it that way because they have made that argument, Your Honor. Obviously, because there is an obligation. I mean, I think what was talked about today was that while your bad behavior can't – your disability doesn't excuse your bad behavior. If the employer is aware that that's the issue, they have a duty to accommodate. I think that's what they are arguing. And our point simply is that the record is very clear that we were addressing her conduct. When she said that she needed help, we reached out to her. We offered to help her. And that she never came back and responded. And that our position is the employer can't assume that somebody needs an accommodation or can't decide what accommodation is needed if the employee is not responding to your offer to say, tell us what you need. Even in a situation where her employees are saying, she's not present. She doesn't answer her email. She's not giving us any direction. And by the way, we think that she's having issues mentally or whatever. We can't go then and assume you need to go see a therapist or whatever. We have already said to her, and she has said to us, I'm working with my doctor to develop a plan. We respond, tell us what you need. We're here to help you. She never, ever, from that point forward to the time she's terminated, ever comes to L'Oreal and says, I need anything. Time off, less responsibility, whatever. So it's very clear here that she is the one who disengaged from any conversation about what L'Oreal might do to assist her in this situation. Let me now turn, if I may, unless you have any more questions about that, Your Honor, to the retaliation claim. Briefly, if you can. Yes. We do not believe that there is a disputed fact about when, that a jury can determine that there's a disputed issue, a fact about when Radha was aware of the offensive text messages. And here is my point about that. It is undisputed that she complained in a text message on June 6th to Radha about crass behavior. He was sexist and intolerant. That was nine days after the incident of her dispute with Mr. Craft. After the June 6th email, nothing happens to Ms. Johnson. Radha says, let's talk about that when you come back from vacation. That's it. In June 11th, he sends an email to Morales that says, when Johnson gets back from vacation, we need to speak with her. We need to develop a plan to work with her and help her. Radha responds, I agree, we're going to have to regroup. There is nothing in those messages, in fact, to the contrary, demonstrates that at that point in time, they are not intending to terminate her. Nothing to the contrary. They're saying, let's talk, let's regroup, let's meet, we need to address her performance. Well, right, but I think the point is, but then the termination occurs soon after that, and the explanation for what happened between the written record of let's figure out how we can help her and the termination is an allegation that these text messages and social media postings were sort of viewed for the first time. By Mr. Radha. By Radha. And I think it's that point that's arguably in dispute. Now, as I was asked, you heard me asking, opposing counsel, is it really in dispute, because what we have from beforehand is Radha being made aware of them as opposed to saying. Correct, correct. But even more specific than that, what's important is that at that date, the only thing that plaintiff points to that raises any suggestion that Radha might have seen these is at the meeting on April 4th, there is a reference made by Morales to problematic text messages. Johnson does not dispute that she wasn't shown the text messages, that there was no specific discussion of the content of those text messages. What she recalls is that at one point, Morales referenced the word intestines. That's it. There is nothing in there to raise a question about whether or not Radha ever saw them. And putting this in context. And that can't be inferred from his presence at that? Well, if in fact Johnson says the text messages were not shown to me, they refused to show them to me, Morales refused. They didn't talk about the specifics of what was in the text. There was some reference to intestines, which Ms. Johnson herself calls kind of a random comment. So there's nothing in that meeting. And let me put this in context for a jury, what's going to be for the jury. Two days before that is when Di Iorio had first come to HR and produced these text messages. It's undisputed that Morales ultimately saw them on that day. That she then reached out to Radha and said, because Di Iorio complained about a lot of things, and simply said a subordinate of Johnson has lodged a complaint about Johnson. Morales testified that she never showed him the text messages and in fact had asked that they be verified. That she, the whole context, all she had was the printout. So by her testimony, I was at the very beginning stages of this investigation. She didn't even identify to Radha that it was Di Iorio that made the complaint. Because we have this space of a very few days and they meet with her the next day. So that they're in this context, right? There is nothing to suggest that in fact Radha actually saw them. Because as Morales testified, I saw them. I asked her to verify so I can see the whole context of this, which actually didn't happen until the 15th. And so a jury, from our point of view, it's not really a disputative view of fact. Because Johnson has acknowledged that during that meeting she didn't see them. They weren't discussed, the specifics. So there is really no evidence other than speculation to contradict the testimony of Morales that I never showed him to Radha. To Radha that I never saw him until the 15th. And Di Iorio's comment when she said that when I gave them to Radha on the 15th, he says I've never seen this before. This is also consistent because remember we're going back to the issue of whether or not that June 6th text is the but-for cause of the termination. And let's look at the difference between Radha's reaction to that June 6th and the messages. Which is, when he saw that June 6th, did he immediately go to Morales and say, I don't want her on my team. She's fired. She raised this alleged complaint of protective activity. No. What happened on June 15th, he saw those text messages. He immediately goes to Morales and says, she can't be on my team. There is nothing that happens between June 11th, June 12th, when they're saying we have no intention of terminating her. And June 15th when he sees those text messages. The only rational, reasonable conclusion is that the text messages is what initiated and motivated the termination. Not the text message of June 6th. I think. Thank you. Thanks. Just quickly, Judge Rakoff. Judge Hanson is correct that page 55 in our brief, we do raise the failure to accommodate claim. No, I don't see that. I don't want to have this debate on your limited time. But I just reread it. I think it's crystal clear that what you say is that the failure to accommodate is evidence of their improper firing of her. But not that you make it a separate claim. But let's not take up your limited time with that debate. On the issue of what Rada did and did not know. I just want to briefly address that the conversation that took place on April 4th was a discussion about the text messages. There isn't clarity in the record about what was discussed. But certainly a jury could infer that detail enough on those text messages was discussed. There is Ms. Johnson's testimony about that meeting, isn't there? There is Ms. Johnson's testimony. Which would contradict the notion that they were shown or discussed in detail. If there's a discussion about her recollection that a specific element of that text message was discussed, I think that does support it. But what matters is not whether or not Rada had seen those text messages on April 4th. It's whether he had seen them prior to June 15th. And so keep in mind there's an ongoing investigation for two-plus months about those text messages, about the other issues that were raised in which he was in regular contact with HR twice a week. So a jury could infer that he did know about them. The final point I want to make is L'Oreal's position as to what its obligation was under the ADA is legally incorrect. Their position, as I understand it, is that it's sufficient to say, we know you have a problem, we're here to help. And that ends their obligation. And this court's holding in Brady against Walmart specifically requires them to take a more proactive approach. It's not sufficient to just say, tell us what you need, and then for them to sit back and watch an employee who's obviously in crisis deteriorate to the point where they can say, now we can fire you. That is not what the ADA contemplates. If there's a continued issue, if Johnson and April 4th, let's just take their evidence, even though we're not required to, said, I don't need time off today. Two weeks later, when HR talks to her subordinates and they say, man, her disability is really interrupting her ability to work, they have an obligation to go back and continue that conversation to see whether there is an accommodation separate from time off, if that's what they believe, that would accommodate her. That's where they failed. The obligation is not Johnson's. It's not her responsibility to know the law better than L'Oreal. And they completely failed in that regard. Thank you, Your Honors. Thank you. Thank you to both counsel. We'll take the case under advisory.